**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION**

THOMAS W. PROCHASKA,

        Plaintiff,

vs.

COLOR-BOX, L.L.C.,

        Defendant.

No. C04-1009-LRR

**ORDER**

---

**TABLE OF CONTENTS**

I.  INTRODUCTION AND PROCEDURAL BACKGROUND . . . . . . . . . . . . . . 1

II.  FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III.  LEGAL ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    A.  Pattern or Practice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    B.  Disparate Treatment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
        1.  Prima facie case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
        2.  Nondiscriminatory reason and evidence of pretext . . . . . . . . . . . 18
            a.  Performance reviews . . . . . . . . . . . . . . . . . . . . . . . . . 19
            b.  Prochaska's letter to the Human Rights Commission . . . . . 23
            c.  Color-Box's response to other employees' mistakes . . . . . 24
            d.  Comments about Prochaska's age . . . . . . . . . . . . . . . . . 25

IV.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

## I. INTRODUCTION AND PROCEDURAL BACKGROUND

       The matter before the court is the Motion for Summary Judgment (docket no. 14) filed by Defendant Color-Box, L.L.C. ("Color-Box"). The motion is resisted.

On March 12, 2004, Plaintiff Thomas W. Prochaska ("Prochaska") filed a Complaint against Color-Box. Prochaska invokes this court's jurisdiction pursuant to 28 U.S.C. § 1331,[1] on the basis this lawsuit raises a federal question. As authority, Prochaska relies on the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended, 29 U.S.C. §§ 621 *et seq.*

The Complaint alleges Color-Box discriminated against Prochaska based on his age, in violation of the ADEA. Specifically, Prochaska alleges Color-Box engages in a practice of terminating employees, requiring them to take early retirement, or transferring them to a less desirable shift upon attaining fifty-five years of age. Prochaska alleges Color-Box gave him commendable reviews until he reached fifty-five years of age, at which point he was placed on a performance plan and then placed on probation for ninety days. Prochaska contends his performance plan was later modified to make it more difficult. Prochaska alleges Color-Box terminated his employment on December 13, 2002. Prochaska seeks "compensation for all damages [he] suffered . . . as a result" of Color-Box's unlawful employment practices, liquidated damages, attorneys' fees, costs of the action, and such other relief as may be just and equitable under the circumstances. On May 7, 2004, Color-Box answered Prochaska's Complaint.

On February 14, 2005, Color-Box filed the pending Motion for Summary Judgment, pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1. In its Motion, Color-Box contends there are no genuine issues of material fact and judgment as a matter of law should be entered in its favor. On March 21, 2005, Prochaska filed a resistance to Color-

---

[1] Prochaska alleges this action arises out of the provisions of the Age Discrimination in Employment Act of 1967 and, therefore, "jurisdiction of this action is conferred upon this Court by 29 U.S.C. [§] 626(b)." Because Prochaska alleges the court's jurisdiction is based on a federal statute, the court finds it has jurisdiction pursuant to 28 U.S.C. § 1331.

Box's Motion. On April 4, 2005, Color-Box filed a reply.

On April 12, 2005, the court struck Prochaska's resistance for failure to comply with the Local Rules for the Northern and Southern Districts of Iowa. The court ordered Prochaska to file an amended resistance in compliance with the Local Rules and to deliver a tabbed paper copy of the appendix to the Clerk of Court on or before April 22, 2005.

On April 13, 2005, Prochaska filed an amended resistance. On April 28, 2005, pursuant to a further court order, Prochaska filed his appendix.

On June 1, 2005, the court held a hearing on Color-Box's Motion for Summary Judgment. Attorney Robert Wilson appeared on behalf of Prochaska. Attorneys Richard Haygood and Mark Zaiger appeared on behalf of Color-Box. The court indicated this written ruling would follow.

## II. FACTUAL BACKGROUND[2]

Prochaska worked at a box plant in Dubuque which is owned and operated by Color-Box (the "Dubuque plant"). At all times relevant to this action, Prochaska was over forty years of age.[3] The Dubuque plant manufactures corrugated graphic packaging. In November 1998, Prochaska transferred from another department within Color-Box to a customer service position. Prochaska began performing customer service representative duties, which included managing the receipt of orders, coordinating the processing of those orders within the Dubuque plant, and handling communication between the Dubuque plant and its customers. Prochaska also was in charge of managing pallet inventory.

In April 2002, Steve Isaac became the customer service manager for the Dubuque

---

[2] The court's factual background is comprised of the undisputed material facts submitted by the parties.

[3] The parties do not include this fact in their Statements of Material Facts, but it is apparently uncontested.

plant and Prochaska's direct supervisor. After a few months, Isaac began to notice problems in the areas in which Prochaska had responsibilities. The Dubuque plant received complaints from other departments and from customers. Isaac determined many of Prochaska's problems resulted from his poor organization and lack of attention to detail. Prochaska did not enter new orders from customers on a daily basis. In addition, Prochaska made errors when entering orders, including entering wrong board codes, incorrect routing information and wrong colors. Isaac repeatedly was called on to correct Prochaska's errors.

Prochaska was responsible for handling the account of the Dubuque plant's largest volume customer, Kraft Foods ("Kraft"). Part of Prochaska's job included entering Kraft's orders in a timely and accurate fashion so they could be prepared and shipped on schedule. Prochaska's job also included communicating with Kraft about the status of its orders. In one instance, Kraft was within six hours of having to shut down its filling operation because of a delayed shipment from the Dubuque plant of Color-Box. In late October or early November 2002, Kraft asked the Dubuque plant's management to remove Prochaska from its account, and the Dubuque plant's management subsequently did so.

During the summer of 2002, Isaac discussed his concerns about Prochaska's performance with Isaac's supervisor, William Burdt. On September 5, 2002, Isaac placed Prochaska on a development plan. The plan identified areas of concern and listed specific areas in which Prochaska needed to improve his performance. Prochaska continued to have performance problems. Isaac maintained and periodically updated a log of performance concerns and complaints regarding Prochaska. Isaac met with Prochaska weekly to discuss Prochaska's performance. In early November 2002, after the Dubuque plant's management removed Prochaska from the Kraft account, Isaac met with Prochaska and revised his development plan to remove goals related to Kraft. On December 13,

4

2002, Prochaska's employment terminated. Following Prochaska's discharge, the Dubuque plant hired a younger worker to replace him.[4]

On May 21, 2003, Prochaska filed an administrative charge alleging age and sex discrimination. On September 17, 2003, the Dubuque Human Rights Commission issued a "no cause" determination and Prochaska subsequently received a "right to sue" letter. On March 12, 2004, Prochaska commenced this action alleging age discrimination.[5]

### III. LEGAL ANALYSIS

Summary judgment is appropriate only when the record, viewed in the light most favorable to the nonmoving party, shows there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Carter v. Ford Motor Co.,* 121 F.3d 1146, 1148 (8th Cir. 1997) (citing *Yowell v. Combs*, 89 F.3d 542, 544 (8th Cir. 1996)). An issue of material fact is genuine if it has a real basis in the record. *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). A fact is material when it is a fact that "might affect the outcome of the suit under the governing law." *Rouse v. Benson*, 193 F.3d 936, 939 (8th Cir. 1999). In considering a motion for summary judgment, a court must view all facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. Further, the court must give such party the benefit of all reasonable inferences that can be drawn from the facts. *Id*.

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which

---

[4] Again, the parties do not include this fact in their Statements of Material Facts but it is apparently uncontested.

[5] Prochaska has abandoned his sex discrimination allegation.

show lack of a genuine issue." *Hartnagel,* 953 F.2d at 394 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and, by depositions, affidavits or otherwise, designate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmoving party must offer proof "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The Eighth Circuit Court of Appeals "'has repeatedly cautioned that summary judgment should seldom be granted in the context of employment actions, as such actions are inherently fact based.'" *Keathley v. Ameritech Corp.*, 187 F.3d 915, 919 (8th Cir. 1999) (quoting *Hindman v. Transkrit Corp.*, 145 F.3d 986, 990 (8th Cir. 1998)). "'[S]ummary judgment should not be granted unless the evidence could not support any reasonable inference of discrimination.'" *Id.* (quoting *Breeding v. Arthur J. Gallagher & Co.*, 164 F.3d 1151, 1156 (8th Cir. 1999) (internal quotation marks and other citations omitted)).

## A. Pattern or Practice

Prochaska alleges Color-Box discriminated against him in violation of the ADEA pursuant to its alleged practice of terminating employees when they reach fifty-five years of age, requiring them to retire early, or transferring them to a less desirable shift. Thus, Prochaska claims he was a victim of Color-Box's pattern or practice of age discrimination. Color-Box responds the evidence does not support Prochaska's assertion that it has a pattern of subjecting employees fifty-five years of age and older to adverse employment actions.

Pattern or practice claims are applicable only in class action lawsuits rather than

individual disparate treatment cases. *See Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867, 876 (1984) (recognizing a "crucial difference between an individual's claim of discrimination and a class action alleging a general pattern or practice of discrimination" because the "inquiry regarding an individual's claim is the reason for a particular employment decision, while 'at the liability stage of a pattern-or-practice trial the focus often will not be on individual [employment] decisions, but on a pattern of discriminatory decisionmaking'") (quoting *Teamsters v. United States*, 431 U.S. 324, 360 n.46 (1977)); *Lockridge v. Bd. of Trs. of Univ. of Arkansas*, 315 F.3d 1005, 1011 (8th Cir. 2003) (recognizing the pattern or practice analysis used in class actions is not applied to actions brought by individual plaintiffs); *Craik v. Minnesota State Univ. Bd.*, 731 F.2d 465, 469-70 (8th Cir. 1984) (distinguishing between the burdens and order of proof in individual discrimination cases and lawsuits brought on behalf of many plaintiffs based on the employer's alleged pattern or practice of discrimination); *see also Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 575 (6th Cir. 2004) (holding individual plaintiffs cannot prove an employer's discrimination by using the pattern or practice method because a pattern or practice claim focuses on proof of the employer's policy of discriminating rather than on the adverse employment decision relevant to the individual plaintiff); *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 711 (2d Cir. 1998) (opining the Supreme Court's decision in *Teamsters* made it evident the pattern or practice procedure is not intended to apply to private, non-class action lawsuits). The Sixth Circuit Court of Appeals has recognized, however, that evidence of an employer's pattern or practice of engaging in adverse employment decisions "may be relevant to proving an otherwise-viable individual claim for disparate treatment under the *McDonnell Douglas* [*Corp. v. Green*, 411 U.S. 792, 800-04 (1973),] framework." *Bacon*, 370 F.3d at 575. The court finds the Sixth Circuit Court of Appeals' reasoning persuasive. Thus, the court will address the quality of Prochaska's

7

evidence of Color-Box's alleged pattern of discrimination in the court's analysis of Prochaska's disparate treatment claim if it is relevant.

## B. Disparate Treatment

The ADEA prohibits an employer from discharging an employee forty years of age or older because of the employee's age. 29 U.S.C. § 623(a)(1). There are two methods by which a plaintiff can demonstrate intentional discrimination based on age:

> First, [a plaintiff] can use the *Price Waterhouse* method by producing direct evidence that age "played a motivating part in [the employer's] employment decision." *Price Waterhouse v. Hopkins*, 490 U.S. 228, 258, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). If [the plaintiff] can produce such direct evidence of age discrimination, "the burden then rests with the [employer] to convince the trier of fact that it is more likely than not that the decision would have been the same absent consideration of the illegitimate factor." *Id*. at 276, 109 S.Ct. 1775 (O'Connor, J., concurring); *see also id*. at 258, 109 S.Ct. 1775.

> The second method available to the [plaintiff] to prove intentional age discrimination is the well-established *McDonnell Douglas* three-part burden shifting analysis, which is used solely for cases devoid of direct evidence of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800-04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

*EEOC v. Liberal R-II Sch. Dist.*, 314 F.3d 920, 922 (8th Cir. 2002). Because Prochaska bases his claim solely on circumstantial evidence, rather than direct evidence of discrimination, the court must apply the *McDonnell Douglas* analysis. *See Mayer v. Nextel West Corp.*, 318 F.3d 803, 806-07 (8th Cir. 2003) (citing *McDonnell Douglas*, 411 U.S. at 802-04). To make such a case under the ADEA, a plaintiff must establish a prima facie case of age discrimination by demonstrating he: (1) was at least forty years of age; (2) performed his job duties at a level that met his employer's reasonable expectations; (3) was

discharged; and (4) was replaced by someone substantially younger. *Id*. at 807. "The prima facie case serves an important function in the litigation: it eliminates the most common nondiscriminatory reasons for the plaintiff's [termination]." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253-54 (1981). If a plaintiff succeeds in establishing a prima facie case of age discrimination, a rebuttable presumption of unlawful discrimination is created. *Mayer*, 318 F.3d at 807. The burden then shifts to the employer to produce evidence of a legitimate, nondiscriminatory reason for discharging the plaintiff. *Id*. "This burden [on the employer] is one of production, not persuasion; it 'can involve no credibility assessment.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)). If the employer meets its burden of production, the presumption of unlawful discrimination disappears. *Mayer*, 318 F.3d at 807. The burden returns to the plaintiff to "'prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" *Reeves*, 530 U.S. at 143 (quoting *Texas Dep't of Cmty. Affairs*, 450 U.S. at 253). Once an employer has met its burden of production, a plaintiff "'can avoid summary judgment only if the evidence considered in its entirety (1) creates a fact issue as to whether the employer's proffered reasons are pretextual *and* (2) creates a reasonable inference that age was a determinative factor in the adverse employment decision.'" *Mayer*, 318 F.3d at 807 (emphasis in original) (quoting *Rothmeier v. Inv. Advisers, Inc.*, 85 F.3d 1328, 1336-37 (8th Cir. 1996)). The burden of persuasion of intentional age discrimination remains with the plaintiff at all times. *Id*.

### 1. *Prima facie case*

Viewing all facts in the light most favorable to Prochaska, the nonmoving party, and giving him the benefit of all reasonable inferences that can be drawn from the facts, the

court finds Prochaska has not established a prima facie case of age discrimination. It is undisputed Prochaska was over forty years of age when Color-Box terminated his position and a younger worker replaced Prochaska. However, the evidence presented to the court demonstrates Prochaska was not performing his job duties at a level that met Color-Box's reasonable expectations. The court is cognizant of the fact the Eighth Circuit Court of Appeals has determined, "[t]he standard to be applied in assessing performance [for purposes of establishing a prima facie case of age discrimination] is not that of the ideal employee, but rather what the employer could legitimately expect." *Id.* (quotation marks omitted) (quoting *Keathley*, 187 F.3d at 920). The evidence demonstrates Prochaska was not performing at the level Color-Box could legitimately expect. On the contrary, the evidence shows Prochaska failed to perform at a level that met Color-Box's legitimate expectations for several months prior to his termination. In particular, Isaac stated the following in his affidavit:

> After a few months in the position [which began in April 2002], I began to notice that Mr. Prochaska was having performance problems. Those problems included poor planning and organization and lack of attention to detail. I was required to remind Mr. Prochaska to enter customer orders on a daily basis. Mr Prochaska regularly made errors in entering such orders, which sometimes caused production errors and delays in shipping product to our customers. Mr. Prochaska was in charge of ensuring that there was an adequate supply of chep pallets so that product could be shipped in a timely fashion. Mr. Prochaska did not keep track of pallets effectively, and periodically, the plant would run out of these pallets. This had the potential to delay shipments of product to customers.

Defendant's Appendix to Motion for Summary Judgment ("Def. App."), 93-94. Isaac also commented he "received numerous complaints from plant employees regarding Mr.

Prochaska" and he "received complaints from customers who were dissatisfied with Mr. Prochaska's communications regarding their orders." Def. App. at 94. Specifically regarding customers' complaints, Isaac stated the following:

> One of Mr. Prochaska's most important duties was to serve as the customer service representative for Kraft Foods ("Kraft"), the Dubuque plant's largest customer. Mr. Prochaska was responsible for entering Kraft orders in a timely and accurate fashion so that the Kraft orders could be prepared and shipped on schedule. Equally as important, Mr. Prochaska was supposed to communicate with Kraft about the status of its orders. Unfortunately, Mr. Prochaska failed to perform these duties adequately. Color-Box management received multiple complaints from Kraft representatives. In one instance, because of a delayed shipment, Kraft was within six hours of having to shut down its filling operation. As a result of this incident, Kraft representatives considered requesting permission from their corporate headquarters to stop using the Dubuque plant as a supplier. The loss of the plant's largest volume customer would have harmed the plant significantly. Kraft eventually asked Color-Box to remove Mr. Prochaska from its account. . . . In late October or early November, when Kraft requested that Mr. Prochaska be removed from its account, he was relieved of responsibility for the Kraft account.

Def. App. at 94-95. Isaac stated that during the summer and fall of 2002, he consulted with his supervisor, Burdt, regarding Prochaska's performance problems. Def. App. at 95. Isaac noted that in September 2002, he and Burdt determined Prochaska should be placed on a development plan. Def. App. at 95. Isaac stated he met with Prochaska and they discussed goals for improving Prochaska's performance. Def. App. at 95. Isaac noted he gave Prochaska a development plan and they met on a weekly basis to discuss Prochaska's progress toward the development plan goals. Def. App. at 95. Specifically, the development plan reflected Color-Box's belief Prochaska needed to improve in the

following aspects of his job: (1) management of due dates and warehouse programs; (2) processing of orders; (3) management of perpetual printed sheet inventory for Kraft/Capri Sun; (4) management of chep pallet inventory; (5) inventory management; and (6) communication. Def. App. at 84-85, 98-99. Color-Box's development plan for Prochaska to improve in those six aspects set forth objectives for Prochaska to work toward, action plans to achieve the objectives, whether other employees were to be involved in the action plans, and the target dates by which Color-Box expected to see improvement. Def. App. at 84-85, 98-99. Prochaska and Isaac signed the development plan on September 5, 2002. Def. App. at 85, 99.

In his affidavit, Isaac stated he kept a log of concerns about Prochaska's performance and gave Prochaska constructive criticism at their weekly meetings but Prochaska showed no consistent improvement. Def. App. at 95. Isaac noted he and Human Resources Manager Greg Parks met with Prochaska after removing him from the Kraft account. They discussed his revised development plan (which was revised due to his removal from the Kraft account) and, although given further opportunity, Prochaska failed to improve. Def. App. at 95.

Burdt stated in his affidavit that Prochaska "had problems communicating with customers regarding the status of orders and inventory. Mr. Prochaska's problems were particularly acute regarding Kraft. On numerous occasions, Mr. Prochaska failed to properly enter an order for Kraft, resulting in delays in production of the products that Kraft required." Def. App. at 100.

Richard Cameron, Jr.,[6] stated in his deposition, "[t]here were several occasions

---

[6] Based on the evidence provided by the parties, it is clear Cameron works at Color-Box. However, the court has not been given any evidence regarding Cameron's position

(continued...)

where the customer would call me and tell me a shipment had been missed or was late, and I guess it would be my complaint that I would want to know before the customer calls me." Def. App. at 112. Cameron further stated he asked for Prochaska to be taken off the Kraft account the day Kraft asked him to do so. Def. App. at 113. Cameron noted Jim Rupkey, Kraft's logistics manager responsible for arranging shipments, told him Rupkey was concerned because there was "no sense of urgency and the communication gap or the time that would go by [was lengthy]." Def. App. at 114. Cameron further stated Rupkey e-mailed him, stating his concerns regarding the "communication time that would go by" and informing Cameron he would like someone different to handle Kraft's business going into the Dubuque plant. Def. App. at 115.

Isaac's log of concerns about Prochaska's performance included the following entries:

| | |
|---|---|
| 7/31/02 | Good Humor upset as Tom cannot remember to get them an inventory. |
| 8/2/02 | Plant is overloaded with [c]hep pallets. |
| 8/13/02 | Rich Cameron still waiting on Tom for answers from July 25[.] |
| 8/26/02 | 0 chep pallets again[.] |
| 9/4/02 | Bob Shoap upset as Tom did not get back to him with information on films and match prints. |
| 9/6/02 | Tom called it [sic] to follow up on some loose ends[;] he will be in on Saturday to enter Kraft orders. |
| 9/9/02 | Tom did not come in on Saturday to eter [sic] Kraft orders. Two orders were not entered until Monday. |
| 9/9/02 | We had to change the laminator schedule to accommodate Kraft shipments. |

---

[6](...continued)
there.

| | |
|---|---|
| 9/9/02 | I asked Tom if he had any open issues with Con Agra. He feels he is in good shape. There are still some orders that need [to be] entered. I am concerned about having orders in soon enough for Jack to trim. |
| 9/12/02 | Entered order 1180 after 3PM. Order is due 9-16. |
| 9/13/02 | Wrong shipping date on releases[.] |
| 9/16/02 | Wrong ["]ship to["] on warehouse release. |
| 9/16/02 | None of the warehouse releases for ConAgra were entered. Shipping could not bill. |
| 9/17/02 | Wild Cherry short on Friday. Tom did not tell customer[.] |
| 9/17/02 | Wrong resource code on a Granite City order. |
| 9/17/02 | Wrong job number on KoolBurst Order. |
| 9/23/02 | Cancelled a load for Kraft[;] forgot to tell shipping. |
| 10/2/02 | Granite City upsed [sic] about poor communication in letter to Rich Cameron[.] |
| 10/7/02 | Jack is still waiting for Tom to enter more Constar. I told Tom to get them entered. |
| 10/15/02 | Orders are not being processed as timely as they should be. Not enough reaction time for the plant. |
| 10/23/02 | Plant is wondering why it is taking so long to get rid of Old Cutting/Printing Dies from ConAgra. |
| 10/27/02 | Tom is communicating more, but needs to communicate more effectively. |
| 10/28/02 | Ran out of [c]hep pallets again. |
| 10/29/02 | Per Steve Sebastian, we don't have enough print orders entered to cover Kraft needs for 2 items. |
| 10/30/02 | Still waiting on answer on old cutting and printing dies for ConAgra Fredericksburg/Britt. Tom has yet to call customer[.] |
| 10/30/02 | Cloud Corp[.] upset with lack of communication about product. Conference call scheduled. |
| 10/31/02 | Per Steve Sebastian[,] we had to add more 10 |

| | |
|---|---|
| | pack [products] that Tom did not account for. Needed for a release early next week. |
| 10/31/02 | Kraft/Rich Cameron upset with poor communication about EZ Mac[.] |
| 11/1/02 | Kraft asked to have a new CSR because of poor communication from Tom. |
| 11/1/02 | Madison load control is asking for an action plan addressing Tom's poor communication[.] |
| 11/4/02 | ConAgra orders not entered in [warehouse]. Shipping can't bill[.] |
| 11/6/02 | Board combination on ConAgra orders is incorrect. |
| 11/8/02 | Still waiting for Tom to order 59" tooling for Constar. I have been asking him to do it for 2 weeks. |
| 11/8/02 | Still open p.o.#s for Printron. I have asked Tom to get them a p.o. for 2 weeks. |
| 11/11/02 | Wrong board combination entered for ConAgra order 1297[.] |
| 11/11/02 | ConAgra out of 2 items. Customer called upset. They were told by Tom they would be in the [warehouse] last Friday. |
| 11/12/02 | ConAgra backlog is full of items we have never invoiced. This needs [to be] cleaned up. |
| 11/12/02 | Entered order 216365 as usp 70 [but it] should have been usw 70 outer liner[;] caused an hour downtime in the plant[.] 8000 sheets of waste[.] |
| 11/13/02 | ConAgra order does not have a Cad in QuickCard for the plant. |
| 11/13/02 | Customers calling upset because Tom did not notify them he would be gone and didn't change his voice mail. |
| 11/14/02 | Order 216499 was entered with the wrong F6 configuration. |
| 11/14/02 | Printcard for 1933 is not correct. Two color job, plant does not know what to put where. |
| 11/15/02 | Tom is out, but I received notification from |

|         | Printron that he owes them a P.O. from 3 weeks ago[.] |
| 11/15/02 | Fredericksburg 931-1090-000[:] no order sent to Monticello.  They ran out of stock and delivered by van. |

Def. App. at 76-77, 82-83.  Several e-mail messages clarify some of the log entries.  For instance, on July 31, 2002, Isaac received the following e-mail from Michael Lambert[7] regarding Good Humor inventories:

> I got another call a few minutes ago from Good Humor asking why Tom cannot get the inventories to them by 1pm on Wednesday.  She keeps getting his voice mail and is upset with having to keep calling me to get it done.  Please find out what the delays are and how we can keep this from happening again next week.  She is giving Tom another hour to get this complete today.  I'll walk over and nudge him.

Def. App. at 78.  Prochaska and Isaac received an e-mail on September 23, 2002 from the Dubuque plant's folding shipping department, which reads as follows:

> Tom, when you cancel a truckload it wold [sic] be nice to let shipping know before we start loading the truck.  That way we don't have to do two steps, load and unload.  You did not send any message before you left for the day.  Would have had this truck loaded and billed if I had not asked Steve a question on it.

Def. App. at 81.  Isaac received an e-mail from Burdt on October 28, 2002, telling Isaac to discuss with Prochaska the fact there were no chep pallets in the warehouse that day to service Color-Box's customers' needs.  Def. App. at 80.

Prochaska admitted in his deposition at least some of the concerns listed in Isaac's log were legitimate.  Def. App. at 24.  Specifically, Prochaska conceded the July 31, 2002

---

[7] The court cannot discern what position Lambert holds at Color-Box.

entry regarding Good Humor inventories was an example of an issue Isaac had with respect to his performance for which he took responsibility because the work was not done by a particular time as requested. Def. App. at 28. Prochaska also admitted he was responsible for keeping track of the chep pallet inventory in the warehouse to ensure the Dubuque plant did not run out of or become overloaded with chep pallets and "was told to order the chep pallet[s] and make sure [Color-Box] had arrival in a timely pattern." Def. App. at 28-31. Prochaska conceded the log entries on September 13, September 16, and September 17, 2002, regarding the incorrect entries into the computer of a shipping date, a shipping address, a resource code and a job number, were legitimate concerns with his work. Def. App. at 36-38, 39-40. Prochaska admitted the October 30, 2002 log entry reflecting Cloud Corp.'s concerns were legitimate: "by the time I got around to communicating with them I guess they [were] looking for product that wasn't there that was due to be there on their doorstep." Defendant's Supplemental Appendix in Support of its Motion for Summary Judgment ("Def. Supp. App."), 3. Prochaska also admitted he entered the ConAgra order incorrectly and entered the Good Humor order with only three days' lead time, as reflected in the November 22, 2002 log entries. Def. App. at 49. In addition, Prochaska conceded the December 10, 2002 entry regarding the creation of 2,000 erroneous sheets for Kraft was a legitimate concern about his work. Def. App. at 50. Prochaska also agreed that, whether or not he caused all of the problems related to Color-Box's servicing of the Kraft account, Isaac clearly believed such service problems were problems with Prochaska's job performance. Def. App. at 45. Prochaska admitted all of the incidents entered into Isaac's log related to customers with whom Prochaska dealt as a customer service representative. Def. App. at 47-48. Prochaska stated it became "increasingly clear" to him that, if he did not meet the objectives set forth in the development plan, negative consequences would result. Def. App. at 56.

The court finds Prochaska did not prove he performed his job duties at a level that met Color-Box's reasonable and legitimate expectations. Therefore, Prochaska failed to establish a prima facie showing of age discrimination and Color-Box is entitled to judgment as a matter of law. If the court allowed Prochaska to continue his lawsuit against Color-Box, it would eliminate the purpose of requiring him to establish a prima facie case. *See Texas Dep't of Cmty. Affairs*, 450 U.S. at 253-54 ("The prima facie case serves an important function in the litigation: it eliminates the most common nondiscriminatory reasons for the plaintiff's [termination].").

### 2. *Nondiscriminatory reason and evidence of pretext*

Even if the court found Prochaska established a prima facie case of age discrimination, Color-Box produced numerous legitimate, nondiscriminatory reasons for terminating Prochaska. Therefore, any presumption of discrimination has disappeared and Color-Box is entitled to summary judgment unless the evidence considered in its entirety creates a fact issue regarding whether Color-Box's proffered reasons are pretextual and creates a reasonable inference that Prochaska's age was a determinative factor in the decision to terminate his employment. *See Mayer*, 318 F.3d at 807. In determining whether Color-Box's proffered reasons are pretextual and Prochaska's age was a determinative factor, Prochaska must affirmatively produce evidence of Color-Box's discrimination: "It is not enough . . . to *dis* believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination." *Id.* (spacing and emphasis in original) (quoting *Hicks*, 509 U.S. at 519). In this case, Prochaska presented the following evidence regarding pretext and the use of age as a determinative factor: (1) three of his most recent performance reviews; (2) a letter he authored to the Human Rights Commission; (3) Color-Box's response to other employees' mistakes; and (4) comments made about his age.

### a. *Performance reviews*

Prochaska stated in his affidavit he had twenty-four years of excellent service with Color-Box and he was not reprimanded until he reached fifty-five years of age. Plaintiff's Appendix in Support of Amended Brief in Opposition to Defendant's Motion for Summary Judgment and Rule 56.1 Statement of Disputed Facts ("Pl. App."), 2. In support of his statement, Prochaska offered his performance reviews from Color-Box for the following dates:[8] February 8, 1999, December 29, 2000, and December 7, 2001. Pl. App. at 53, 55-56, 58-59. The performance review dated February 8, 1999 indicates Prochaska's performance in the areas of work standards, team work and attendance were "commendable" and Prochaska's performance in the areas of technical/professional proficiency, customer service orientation, communication, attention to detail, planning and organizing, and initiative were "competent." Pl. App. at 53. Prochaska's overall performance was rated on February 8, 1999 as "competent." Pl. App. at 53. Sebastian's review of Prochaska's performance in 2000, which Sebastian completed on December 29, 2000, indicates Prochaska's work in every applicable area "exceed[ed] expectations." Pl. App. at 55. Sebastian summarized Prochaska's performance in 2000 as follows:

> **Accomplishment Summary** . . .
> Tom performs all customer service functions as required[,] as in order entry, estimating and account management.
> He conducts weekly inventories on the higher volume accounts which include Kraft Foods Capri Sun, Kraft Foods Oscar Mayer and Good Humor.
> He will fill in at the plant scheduling [office] if needed and cover for another customer service rep as needed.
> He takes care of the [c]hep pallet program we use for or [sic]

---

[8] The court utilizes the dates of the relevant performance reviews or discussions with Prochaska regarding said reviews rather than the dates on which the performance reviews were signed.

> customers.
> He handles the largest volume account that we have: Kraft Foods.
> Conducts end of month inventories and confirms the correct numbers in the Amtech system.
> Communicates with other Color-Box locations to coordinate shipments too [sic] three different locations for Capri Sun.
>
> **Strength/Growth** . . .
> Tom comes to work with the proper attitude and is ready to get started and deal with the business of the day.
> He handles the biggest account that we have which includes many different printings and a large inventory of work in process and finished goods ready for shipping.
> He has grown in knowledge of the Amtech system and Pace.
> He has a control on the inventories for his major customers and will monitor them and replenish them as needed.
>
> **Development Needs & Plans** . . .
> He will be working to improve his knowledge of the Amtech systems and other office systems to improve his ability to control the inventories that we have for our customers.
> Work with other customer service reps to further his understanding of their accounts.
> Work on a method to help organize his daily work.

Pl. App. at 56. Sebastian's review of Prochaska's performance in 2001, which Sebastian completed on December 7, 2001, indicates Prochaska's work in every applicable area except one "exceed[ed] expectations." Pl. App. at 58. Prochaska's work in the area of initiative and innovativeness "need[ed] improvement." Pl. App. at 58. Sebastian summarized Prochaska's performance in 2001 as follows:

> **Accomplishment Summary** . . .
> Tom is in charge of the largest customer for the Litho Laminated operation. He works with the Richmond facility to coordinate shipments to three locations.
> He also keeps a running inventory for numerous different

printings to supply the customer in a timely matter [sic].

He is the backup to the scheduler and to any of the other customer service representatives that are out of the office.

He works very closely with the traffic department at Kraft [F]oods and their two major carriers to schedule deliveries to the customer.

Tom is in charge of the [c]hep pallet activity i.e. keeps [an] inventory and balances this with Chep on a monthly basis.

**Strength/Growth** . . .

Works with the plant personal [sic] to reduce any problems on the production floor.

Has a strong working knowledge of the Production Control System that is used for scheduling and the Amtech system that is used for order entry and estimating.

He is familiar with accounts other then [sic] his own so he can answer any questions that come from our customers.

Works well with the other members of the customer service department to form a strong team.

**Development Needs & Plans** . . .

To implement a better system to track on hand inventories. In a computer system such as Excel.

To achieve this a seminar may be needed.

Pl. App. at 59.

In his deposition, Prochaska admitted he did not believe Cameron discriminated against him on the basis of age. Def. App. at 32. Prochaska further conceded he has no evidence Cameron was prejudiced against him because of his age. Def. App. at 32. Prochaska's letter of termination informed him the reason for his discharge related to his performance. Def. App. at 60-61, 72; Pl. App. at 38. Prochaska stated in his deposition no one at Color-Box ever told him he was being discharged because of his age. Def. App. at 69. To support his claim of age discrimination, Prochaska points out he received commendable performance reports for almost twenty-five years until the last ninety days,

when "everything crumbled." Def. App. at 62. Because of his personal experience, he felt "there must have been some kind of initiative to make it such that [he was] no longer desired [at Color-Box]." Def. App. at 62.

Isaac and Burdt both stated in affidavits that they were aware Prochaska asserted he was terminated because of his age but they know of no facts to support such a claim, they did not treat Prochaska differently because of his age, and they know of no facts that support a claim that Color-Box, or any of its supervisors or managers, has treated any employees, including Prochaska, differently based upon age. Def. App. at 95, 100.

Prochaska contends his performance reviews were positive until September 2002 and Color-Box started documenting his mistakes at that time in order to create a paper trail justifying Color-Box's termination of his employment in December 2002. The court finds Prochaska's argument unpersuasive. An employer does not have an obligation to keep an employee indefinitely if the employee consistently has work problems after the employer has worked with him in an attempt to help him improve his work performance, the employer has received numerous complaints from customers and other departments regarding the employee's performance, and the employer's largest customer asks the employer to remove the employee from the customer's account due to the employee's performance problems on the account. *See Mayer*, 318 F.3d at 810 (recognizing it is inappropriate for a court "to sit as a super-personnel department who second-guesses [the employer's] business decisions") (citing *Dorsey v. Pinnacle Automation Co.*, 278 F.3d 830, 837 (8th Cir. 2002)).

In light of the evidence presented, the court is unpersuaded by Prochaska's allegation the change in his performance reviews demonstrates Color-Box's legitimate, nondiscriminatory reason for terminating his employment is merely pretextual.

### b. Prochaska's letter to the Human Rights Commission

In support of his allegation that Color-Box's reason for terminating his employment is a pretext for discrimination, Prochaska also offered a letter he wrote to the Human Rights Commission on May 7, 2003 following his discharge. In the letter, Prochaska contended:

> I was singled out as the perfect target to lay any and all blame on regardless of fault. It is my contention that as I was 55 years old[,] my dismissal was motivated by age discrimination. I indeed have been informed that 2 people approx. 30 yrs. old have been hired in my place. I have also seen the following people terminated in the past approx. 2 years:
> John Walshire - Product mgr - approx. age mid 40's
> Gerry Vaassen - National Sales - former G.M. - mid 50's
> Ed Heim - Maint Supervisor - early 50's
> Frank Mazzei - G.M. - early 40's
> Neil Spurr - Controller - mid-50's
> Also Dave Elliott - Foreman - mid 50's - took early retirement to escape termination.
> Recently Gene Heiberger - Foreman - late 50's left the company under duress.
> There may have been others. This to me looks like a pattern of behavior that is too obvious to overlook.

Pl. App. at 39.

With regard to his pattern or practice allegation, Prochaska admitted in his deposition he had no firsthand knowledge of the circumstances surrounding the employment situations of the individuals listed in his May 7, 2003 letter to the Human Rights Commission. Def. App. at 64-65. Although he considered it "not probable that they could all get so bad so quick," Prochaska conceded each one of the adverse employment actions may have been legitimate and based on the individuals' performance rather than their age. Def. App. at 65. Prochaska admitted his conclusion that Color-Box

has a pattern of discriminating against individuals because of age is based only on what he has heard. Def. App. at 66. Prochaska stated it did not surprise him to hear that six out of twenty-eight people at Color-Box in the salary rank are over fifty-five years of age. Def. App. at 67. Prochaska did not offer affidavits of the individuals whom he alleges were discriminated against based upon their ages, and he did not offer any statistical or other evidence regarding the adverse employment actions allegedly taken against those individuals.

In light of the evidence presented, the court finds unpersuasive Prochaska's allegations regarding Color-Box's pattern of discrimination as evidence Color-Box's termination decision was pretextual.

### c. Color-Box's response to other employees' mistakes

Prochaska alleges his mistakes are commonly made by others in the Dubuque plant and Color-Box did not terminate anyone else's employment or place others on development plans as a result of their mistakes. Therefore, Prochaska contends Color-Box must have made the decision to terminate his employment based on his age. The Eighth Circuit Court of Appeals has recognized a "common method of proving pretext is to show that it was not the employer's policy or practice to respond to [work performance] problems in the way it responded in the plaintiff's case." *Erickson v. Farmland Indus., Inc.*, 271 F.3d 718, 727 (8th Cir. 2001) (citations omitted). Additionally, without providing evidence of other cases in which individuals' mistakes were handled differently, "a plaintiff can establish pretext by showing that it was unlikely an employer would have acted on the basis of the proffered reason." *Id.* (citing *Fisher v. Pharmacia & Upjohn*, 225 F.3d 915, 921-22 (8th Cir. 2000)). Gregory Parks, the human resources manager at the Dubuque plant, stated in an affidavit, "between January 1, 2001 and December 31, 2003, at least three under-55 [year old] employees were placed on development plans, including a customer service

representative, and two out of the three employees ultimately were terminated for performance reasons." Def. Supp. App. at 15. In light of the evidence presented, the court is unpersuaded by Prochaska's allegation he was discriminated against based on Color-Box's treatment of other individuals who also made mistakes in their work.

### d. Comments about Prochaska's age

Finally, Prochaska contends someone at Color-Box made a comment at some time regarding his age, and such comment supports his contention Color-Box terminated his employment in violation of the ADEA. Prochaska does not indicate what individual allegedly made such a comment. More importantly, Prochaska does not allege the individual who decided to terminate his employment made the comment. Assuming someone at Color-Box made such a comment, there is no evidence the statement was made at or near the time the decision to discharge Prochaska was made or by the person who decided to discharge him. The Eighth Circuit Court of Appeals has held, "'*some* causal relationship is necessary to demonstrate the significance of non-contemporaneous statements, or statements made by persons other than the relevant decision-maker, to the resolution of the ultimate issue of intentional discrimination.'" *Kohrt v. MidAmerican Energy Co.*, 364 F.3d 894, 898 (8th Cir. 2004) (emphasis in original) (quoting *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 779 (8th Cir. 1995)); *see also Hitt v. Harsco Corp.*, 356 F.3d 920, 925 (8th Cir. 2004) (noting "'stray remarks' regarding age may be relevant to establishing a *prima facie* case or pretext under some circumstances, [but] such comments are not persuasive evidence of motive when the remarks are made by persons other than a decisionmaker") (citing *Girten v. McRentals, Inc.*, 337 F.3d 979, 983 (8th Cir. 2003)). The court has no evidence of a causal relationship between the statements made by some unknown individual at Color-Box and the decision to terminate Prochaska's employment. Therefore, the court finds unpersuasive Prochaska's allegation he was

discriminated against because of his age as demonstrated by a comment made by someone at some time.

## IV. CONCLUSION

After reviewing the record in its entirety, the court finds Prochaska presented insufficient evidence for a reasonable fact finder to infer that his age actually motivated Color-Box's decision to terminate his employment. *See Mayer*, 318 F.3d at 809 ( finding insufficient evidence in the record to support the plaintiff's claim of age discrimination and recognizing, "[e]vidence, not contentions, avoids summary judgment"); *Rothmeier*, 85 F.3d at 1337 (concluding the plaintiff "presented neither direct evidence of age discrimination nor sufficient circumstantial evidence for a reasonable factfinder to infer that [the plaintiff's] age '*actually motivated*' his employer's decision to discharge him"). The record is devoid of any evidence Prochaska's age impacted Color-Box's decision to terminate his employment. Just as the Eighth Circuit Court of Appeals found in *Kohrt*, this court finds Prochaska's ADEA claim "generally 'is supported more by contentions and speculation than evidence, and it is insufficient to withstand summary judgment.'" *Kohrt*, 364 F.3d at 898 (quoting *Girten*, 337 F.3d at 982). Therefore, the court finds Color-Box is entitled to judgment as a matter of law.

For the foregoing reasons, **IT IS HEREBY ORDERED**:

(1)    Defendant's Motion for Summary Judgment (docket no. 14) is **GRANTED**.

(2)    Plaintiff's Complaint is **DISMISSED** with prejudice.

(3)    All court costs are assessed against Plaintiff.


**SO ORDERED.**

**DATED** this 1st day of June, 2005.

LINDA R. READE
JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA